Okay, before you stand up and argue, let me just tell you briefly why we've done what we did. We found in our so-called pre-pubs this opinion of which we have just alerted you this morning, but it was not going to be published until this morning. So we knew at the very end of last week that this opinion was coming down, but we weren't at liberty to tell you. So we figured the next best solution is to tell you this morning. That we treat then as, of course, established law. On the retroactivity question with Davis, we wanted to give you a chance to both read it and then think through as best you can what's left of your case. Okay, so fire away. I'm not sure we've got 15 minutes' worth of stuff left to say, although that was what was originally set out as the argument time. May it please the Court, Daniel Buffington along with my co-counsel Evangeline Abreu appearing on behalf of the petitioner Antonio Nava Romero. Originally, Your Honors, we were going to split our time evenly, but in light of the retroactivity issue taking a greater interest here, the plan is for myself to speak for eight minutes, Professor Abreu to speak for four minutes, and then leave three minutes for rebuttal with the Court's permission. Okay. If there's 15 minutes' worth of argument left in the case, okay. We'll see how we get there based on Your Honor's question. Okay. So we know that Diaz tells us that the late decided case tells us Diaz is not retroactive. Yes. Okay. So that we just take as a given. If that's a given, then maybe we don't have 15 minutes to argue, Your Honor. Well, that's the whole reason we gave you the case. It's a given. Sure. As Your Honor alluded to, the central issue here is whether or not the government can deport Mr. Nava based on two Arizona shoplifting offenses, and specifically whether or not those shopping offenses are crimes involving moral turpitude. And for over 70 years, the BIA, the Board, followed the exact same rule, and that is that for a theft-related offense to involve moral turpitude, there had to be either permanent or a permanent deprivation. Now, in 2016, as this Court just alluded to, the BIA changed that rule, and is now applying it to so that it can be. Okay. But for our purposes, the old rule applies. For our purposes, the old rule applies. Exactly. And so under that scenario, we have to decide whether or not Mr. Nava's shopping offenses involve a permanent or non-permanent take. And so in looking at that, Your Honor, applying the categorical approach, we look only at the statute and not the facts involved in the case. Of course. Right. I mean, the reasons that support this was not a permanent taking, we have Arizona case law on point that shows the deprived definition at issue here does not require a permanent intent to deprive. The first case on that is State v. Morse. That's an Arizona Supreme Court case. And then the second one is State v. Yarborough. And I might add, the last time we were before this circuit, we briefed this exact issue and we cited Yarborough, and the government agreed with our position that under Yarborough, shoplifting does not require an intent to permanently deprive in Arizona. Beyond those Arizona State Court cases, we also have BIA cases resolving this issue under the old rule. And they are unpublished cases, Your Honor, but nevertheless they show that Arizona shoplifting is not a crime involving moral turpitude because there's no permanent intent to deprive. Right. Now, that seems to be pretty clear. Now, the government may have a different view of the matter, but okay. Sure. Our position is those are relevant to resolving the issue. The BIA acknowledged under the old rule that this statute was not a crime involving moral turpitude. I suspect the case that's best in the government's favor is Harado, Your Honor, and that's a 2006 case where the BIA looked at a statute from Pennsylvania and found that in a retail theft situation, there could be a presumption of an intent to deprive permanently. But for the reasons I just articulated, the Arizona case law on point and the unpublished BIA decisions that were post-Harado, finding otherwise this court should not follow the Harado example there. And in addition, Harado conflicts with the categorical approach by presuming an intent and not looking just at the statute itself and what could be addressed there. Is there anything to remand here? I don't believe so, Your Honor. This is a legal question looking only at the statutes involved. So we would ask the court to decide the matter here. And on that note, I might add this is the third time Mr. Nava has been before the circuit. He's been in detention for five years. And these are for two shopping offenses that he never received jail time for, that he's now been in federal immigration custody for a lengthy time. I know he'd appreciate resolving the case at this time. Okay. If there's no further questions on the analysis of the old rule, I'll turn it over to Evangeline Abreuil. Thank you, Your Honor. Okay. Good morning, Your Honors. Evangeline Abreuil, also representing Mr. Nava Romero. I was going to discuss deference, if the court would allow me, because while the case could be resolved on retroactivity, Diaz-Serraga is also not entitled to deference, and that is because it is not reasonable under Chevron Step 2. Now, where's this argument going? Are you arguing in support of the decision we reached in Garcia-Martinez? Yes, Your Honor, although that decision did not actually address deference. It decided the case on the basis of retroactivity. Well, but if Diaz is not retroactive, what kind of deference are we talking about? Deference for using Diaz-Serraga in other cases, Your Honor. Because Diaz-Serraga affects Mr. Nava Romero, of course, but it also affects many other people who pled to offenses that involved nonpermanent takings and that were not crimes involving moral turpitude at the time they pled, but became crimes involving moral turpitude if Diaz-Serraga is given deference. I'm not sure I understand. I'm trying to figure out if your argument is relevant after our decision on Garcia-Martinez. Your Honor, this case could be decided on retroactivity. Mr. Nava's case could be decided on retroactivity. If I understand you, you're saying we could say that there's nothing to defer to because the BIA decision saying that shoplifting is a crime of moral turpitude isn't retroactive to this man's case, or you would prefer that we say shoplifting just plain isn't a crime of moral turpitude. Have I got that right? Yes, sir. The argument on deference is that in addition to not being able to be applied retroactively because it is such an abrupt change and fails under the Montgomery Ward factors, it is also not entitled to Chevron deference in any case. I'm pretty sympathetic to your entire argument. My problem is with reaching your entire argument. Yes, Your Honor. If this man gets relief without it, are we, as a matter of good judicial work, supposed to reach it? Your Honor, that is a question I've been asking myself as well, and probably would research if I had a little more time to research that point. But I did want to put the argument out that this decision could have broader implications than just Mr. Nava's case. If it went your way, it sure would. Yes. Yes, Your Honor. The reason that — so I'll make my argument very briefly. The reason that the ESA-SRAGA is not entitled to deference is because it's not reasonable under Chevron Step 2, and that is because it conflates moral turpitude and culpability in a way that conflicts with the Immigration and Nationality Act. Congress wrote the Immigration and Nationality Act to make people removable for certain types of offenses, not for all offenses. And this Court in Robles-Urrea and Nunez v. Holder has clarified that not all offenses — just because something is illegal does not make it involve moral turpitude. And the phrase moral turpitude cannot be written so broadly to include all offenses. Now, the Board can change its position under Brand X, but it has to give some reasoned explanation for why it's doing that. And the explanation that it gave in DSC-SRAGA has nothing to do with moral turpitude. It has to do with changes in the criminal law, so that the Board says because the model penal code and state criminal codes now consider theft to be theft regardless of whether it's a permanent or nonpermanent taking, we must also consider it to be a crime involving moral turpitude. And that conflates those two concepts in a way that is not a permissible construction of the Immigration and Nationality Act and, therefore, is not entitled to deference. I was also prepared to talk about vagueness, but I don't believe Your Honors would like to hear that at this point. Roberts. I'm curious about something. I don't know that we need to get anywhere near it in this case. We've got a 1951 Supreme Court decision saying it's not vague. Arguably, it can be limited or distinguished, but there's a problem with that because our circuit law says ever since that decision, not vague. Now, there's some really good language by Judge Posner in a Seventh Circuit decision where he says nobody even knows what the words mean anymore. I remember when I was practicing law, what crime involving moral turpitude meant was a crime of dishonesty or sex. So homosexuality was morally turpitudinous murder wasn't. I think no one thinks that anymore. And nobody knows what, as Judge Posner said, what base and vile and depraved even knows what those words mean anymore or morally turpitudinous because they're no longer words used in ordinary speech the way they were in 1951. So I see the strength of everything you're saying, but I just don't think we're allowed to overrule the Supreme Court until it overrules itself. And I don't know why we'd reach it. Is there any reason for us to accept that it would protect a whole lot of people who've committed petty offenses that maybe they shouldn't be deported for? Your Honor, that would be a reason for reaching it. There's an argument about constitutional avoidance if there are other ways that you can resolve this matter. But just to address your decision about Jordan v. DeGeorge, there have been so many changes since 1951 that undercut the Jordan v. DeGeorge reasoning. You could just consider it a narrow decision and say that it involved only offenses dealing with fraud because the Jordan v. DeGeorge court was quite clear that it was really limiting it to fraud. But I don't think that you need to do that because of the changes that have taken place. First, we have the categorical approach, which has completely changed the way we analyze crimes for immigration purposes. And then we have intervening authority that undercuts Jordan v. DeGeorge. And the first one is Padilla v. Kentucky, which emphasized how important it is for people to be able to predict the immigration consequences of criminal conduct to the extent that counsel, defense counsel, now must advise their clients of the possible immigration consequences. But then we have the Johnson case in 2016. And there the Supreme Court highlighted the difficulty of analyzing an abstract term under a categorical approach. And that's the same thing that's required for a crime involving moral turpitude. The Court must take the vague term of crime involving moral turpitude and analyze it under a judicially hypothesized least criminal, least culpable conduct. And that results in two indeterminacies, either of which might be acceptable by itself, but together constitute what Justice Scalia said is a task that is at best guesswork. So because of those changes in the law, those changes don't foreclose this Court from reaching the question of vagueness, although constitutional avoidance might. Thank you very much, Your Honor. And there are three minutes left on the clock. Okay. Diaz is gone. And what's left? Well, actually, may it please the Court, Sarah Bird, on behalf of the Respondent, I first would say that the decision you handed me this morning is distinguishable for the same reasons that I said that the Second Circuit's decision that came to the same conclusion, Obaia, was also distinguishable. They brought that up in a 28J letter and I responded. I think that in this case we are talking about something narrower than just theft. We are talking about retail theft. And so, you know, in Garfias-Rodriguez, this Court on Banks talked about the Montgomery Ward reliance factors and talked about how it's always a case of theft. I understand that. You're saying retail theft is more vile and depraved than theft generally? No, I'm not saying that. But I am saying that retail theft is not an abrupt change. So if you go to the Montgomery Ward factors, the second one is whether it was an abrupt change and the third one is whether there was reliance. So are you telling us that Diaz is retrospective in this case? Yes. That's exactly what I'm trying to argue. If you'll follow with me for a second. Okay. That's uphill work, but let's go. Okay. Thanks. So the main point here is that the outcome is the same. So I acknowledge that Diaz was a change. It changed the landscape of how these cases are analyzed, but both before and after Diaz, retail theft, where on the face of the statute, not looking at the underlying facts, but looking just at the language, the statutory language, if the merch — what was taken, the property taken was merchandise, then the Board had already had precedent caseload from 2006 saying that that is categorically a crime involving moral turpitude because there is an assumed intent to permanently deprive. Well, but what happens if the Arizona statute does not have that assumed intent? Well, the Board in this case held that it did. We don't have to guess what the outcome would be under the old rule, because the Board actually addressed this case under the old rule. And that's why I think this case is different, because in Garcia, the one you just handed me, in that case, no one — it was clear that under the old rule, it was not a CIMT, and under the new rule, it was. And so the only issue was whether the new rule could be retroactive. But here, the outcome, CIMT, is the same under both the old rule and the new rule. So at the time that he pled guilty to his second offense in 2010, there was precedent Board decision looking at a Pennsylvania retail theft statute that was — In other words, you're saying we don't need Diaz. Well, right, because the outcome is the same. So, one, Diaz is not impermissibly retroactive. Whether Diaz — in your view, whether Diaz is retroactive or not makes no difference to this case, because Diaz is off the table, and that's the argument you're making. I'm saying — yes, I'm saying the outcome is the same. I think the analysis in Diaz is entitled to deference. But in order for us to agree with you, I think you have to — in order for you to win, I think you have to convince us that the pre-Diaz law with respect to retail theft is the same pre-Diaz as post-Diaz. Yes, the outcome is the same. I'm not arguing that the analysis is the same. Diaz changed the analysis as to how they got to that outcome. But the outcome, pre — you're right. In order — and that's why I think the retroactive factors weigh differently here, because there was controlling Board precedent at the time of his conviction, matter of Gerardo Delgado, that said that when, on the face of the statute — and if you look at the Pennsylvania statute and Gerardo Delgado as compared to the Arizona statute here, they're very similar — and when, on the face of the statute, what's being taken is merchandise, then it's categorically a crime involving moral turpitude. So had he received that important criminal defense lawyer guidance, they should have told him this is a crime involving moral turpitude, because it was at that time. Roberts, I thought the Pennsylvania law was different in some respects. I can't remember for sure, but I think under the Arizona law, you don't actually have to take it. No asportation is required. If you just move it on the shelf so that the store doesn't notice and you can come back in a week when you've got the money for it, that's shoplifting under Arizona law, but I don't think it is under Pennsylvania law. My understanding is that it's not under Arizona law either. I agree with you, Arizona — and the wording is not word for word the same. I'm not claiming that it is. But I'm — Asportation element is what interests me. But the asportation — so I think you're referring to shoplifting by concealment under Arizona law. That's one of the ways that it can be done. It was enough just to move it on the shelf. But that is asportation, moving. No, asportation, you have to remove it from the property. Well, the Arizona court in — Arizona construing its statute, it does not require asportation in the common law sense. Moving it is enough. The Arizona court in Slovakia said that it did. They were dealing with shoplifting by concealment, and they said that it did involve asportation. They addressed that. I see what you mean. And so they're — Boy, under your argument, if we bought it, you wind up with a Ninth Circuit decision deciding whether shoplifting and other such petty offenses are or are not crimes involving moral turpitude, as your adversary suggested we should. Well, I want to go back to something you said, that you could move something with the intent to come by and purchase it. That wouldn't — Yes. I'm thinking you go into Sam's and there's a gadget for your computer, you'd really like it, but you have no money for it today, so you put it in another part of the store, the part that has pads of paper and pens and stuff for offices, and — And hopes no one else will find it. And hopes no one notices for a week until you can come back with money. That's shoplifting in Arizona. I don't think that that would meet the intent requirement for Arizona, that, yes, that would be concealing and it would have aspiratation because you are moving it, but it would not — And if it's a computer gadget, it's likely to lose value during that week, so the store suffers the loss in value. During a week? I don't know. Something new comes out? I think it depends on how long. And I think that that's what it would come down to, is whether at the time you moved it, did you have the intent to substantially erode the property value of it, or did you just, as you discussed, have the intent to try and come back and buy it when you afforded it? But the intent you're discussing isn't intent — But you followed Apple Rumors' sites, and you know they're going to come out with a new model this week? Well, you clearly have the intent to prevent somebody else from buying it, which means you clearly have the intent of depriving the company of the money for the purchase price during the time you're hiding it. But then you have the intent to give them the purchase price, which I — But later. Well — And you're depriving them of the interest of getting the money on time. I think, again, this — in some ways it comes down to the difference between joyriding, which you're taking the car for just a brief period, and then, of course, you could take a car and put 100,000 miles on it and then return it. That's a temporary taking, but that substantially erodes the property value, which is why the Board's decision in Diaz is reasonable, that they say, look, there are times when even a temporary taking erodes the value of the property so much that it is practically permanent for purposes of the owner. They've lost something permanently. And that's the type of thing you're talking about. But under Gerardo Delgado, at the time of this individual's convictions, there was controlling Board precedent that said that shoplifting, where merchandise on the face of the statute, looking categorically just at the statute, where merchandise was involved, because people don't typically borrow merchandise and they don't typically joyride with merchandise, it just didn't fit into the exceptions that had previously been carved out, where temporary takings that are just borrowing without that intent to deprive. I remember reading a story in the Wall Street Journal not long ago that retailers were having problems with people who took merchandise for a particular use, used it, and then returned it. And the stores were having to reconsider their owners' prom dresses kind of thing. Right. Prom dresses. But that is up to the store to change their return policy. If, you know, and that's joy riding the prom dress. It would be. And this statute doesn't cover that, because this statute talks about intent to substantially erode the property value or permanently deprive. But under Gerardo Delgado, which this Court has never overruled, no court has ever that I am aware of said that that precedent board decision from 2006 was wrong or was not entitled to deference, this Arizona conviction was a CIMT at the time it was committed. So then that means that under the old rule it was a CIMT, and now under the new rule it's not impermissibly retroactive because there could be no reliance. The outcome is the same. So now the board has clarified how it gets to that outcome. Now it just includes substantially eroding instead of relying on this presumption. But under either analysis, the outcome is the same in this case. And so I think that that is where this Court's decision in Garcia is different, because in that case the outcome was totally different and it was acknowledged. Kennedy, that leave us room under Marmoleo Campos, I think the name of it was, to consider whether we ought to give deference to that particular position of the BIA? Marmoleo Campos. Wasn't that our en banc where we said we don't know what kind of problem our perpetuities will defer? It was. That was your 2014 en banc decision. And that case cited Gerardo Delgado, but didn't disagree or agree with the other So they basically say that oh, I don't have it right here in front of me. I thought I did. But they cite it and they say that it's out there. And also in Castillo-Cruz, I think that's actually the case I'm thinking of. Castillo-Cruz cited Gerardo Delgado and said, well, that falls still within the analysis that we've always had, that theft, where it involves a permanent taking, intent to permanently deprive, is a crime involving moral turpitude. So that's the one I'm thinking of. I don't know about Marmoleo Campos. But this Court has consistently held, and I understand the arguments that are also being raised, that shoplifting is small, that it's just small, and so, but this Court has consistently held that theft is a crime involving moral turpitude. And depraved and base and all that stuff. I don't know. The other definition, the other is just against the duties owed between people in society, and it is that. It's against the duties owed people in society. And also as You are duty not to speed on the freeway. That's true. But that has not been held for decades and decades to be a crime involving moral turpitude. And that's no longer a crime involving moral turpitude. What isn't? I'm sorry, I didn't hear you. Drunk driving. That's true, although this Court recently held that aggravated DUI is a crime involving moral turpitude. But I would say that that is on the margins. But theft and fraud, as the Supreme Court considered in DeGeorge, have long been held to be crimes involving moral turpitude. So even if the phrase becomes a little vague on the margin. You can shoplift with no fraud or deceit or concealment to it. You can just grab a six-pack and walk right out of the liquor store with a six-pack in your hand, and there's no deceit to it. You're just hoping they don't notice you. That's true. It's not the same thing as fraud, but it is another. It could be fraud. I mean, another way of doing it is put it under your jacket. But it could also be just open and adverse. Yeah, open, adverse. But it's still, it's that intent. The culpable conduct plus the intent that the Board has long looked at as what is the definition of a crime involving moral turpitude, and there's no surprise that retail theft is a CIMT because it was before and it is after Diaz. And we addressed that in our Board, I mean, in our brief, and talk about how the outcome is the same both under the old test and under the new test. So that's why I don't think there's any issue of impermissible retroactivity here. And the Board said as much in their decision on the motion to reconsider. You know, their first decision, the November 10, 2016 decision, they relied on Gerardo Delgado and the old law. And then he filed a motion to reconsider, and they said, well, we don't need to reconsider it because there's no error of law. This is now controlled by our new law. And the Board said there's no retroactivity issue because our previous decision was based on the earlier precedents and came to the same conclusion. So for those reasons, we would argue that this case is, on a case-by-case basis, looking at whether there's impermissible retroactivity. This case there isn't because the outcome is the same. Roberts. Thank you. Would you like to respond to that argument? Yes, Your Honor. Your Honor, the government is trying to distinguish this case, making a difference between theft and retail theft or shoplifting. And that argument depends entirely on the Gerardo decision. Gerardo, again, was the case in 2006, applying the CRMT analysis to Pennsylvania shoplifting, pointing that in that situation, you can presume there's an intent to permanently deprive. That doesn't work here for three reasons. And that's because we have Arizona case law explicitly saying that there's no intent, the intent to permanently deprive is not required. Despite Gerardo, as I mentioned before, the BIA subsequent to Gerardo decided in three separate cases that Arizona shoplifting is not a crime involving moral turpitude because it's a different analysis. The Arizona statute doesn't abide by this presumption, notwithstanding Gerardo. So the claim that both before, that after Gerardo and before Diaz-Lizarraga that the case would have been decided the same, that's just not true based on BIA decisions in Arizona case law. In addition, as I mentioned before, the last time we were in front of this circuit, the government agreed with us on this point and cited the Yarborough decision for the proposition that Arizona shoplifting does not require intent to permanently deprive. And now, because of Diaz-Lizarraga development, they have apparently switched that position and are arguing something completely different. I would urge the court to look at that. It's on page 104 in the record in their motion to remand that the government concedes that Arizona shoplifting under the old rule does not require an intent to permanently deprive and is therefore not a crime involving moral turpitude. The counsel mentioned the Castillo-Cruz case. In that case, that construed California theft offense. But to find the intent to permanently deprive there, the court relied on California case law that had that intent, that described the intent as requiring a permanent intent to deprive. There's no Arizona cases that make that same point. They make just the opposite point, that there is no permanent intent required. And the government has cited no Arizona cases that say anything different than that. If there's no further questions, we would ask this court to grant the petition. Okay, thank you. Thank both sides for good arguments. There's more to argue about than I thought there was. And I appreciate your patience putting you to the end of the calendar. Novo Romero versus Sessions submitted. And that's the end of our session for this morning.
judges: D.W. Nelson, Kleinfeld, W. Fletcher